UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HASSAN ALLÉ ABDUL, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-3196**<br>**consolidated with**<br>**Nos. 10-4031 and 10-4452** |
| **NEWELL NORMAND, ET AL.** | **SECTION "J"(1)** |

## ORDER AND REASONS

These consolidated actions were filed by state inmates pursuant to 42 U.S.C. § 1983. The actions resulted from shakedowns and destruction of inmate property by officials at the Jefferson Parish Correctional Center. All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.

The lead case, Civil Action No. 10-3196, was filed by Hassan Allé Abdul against Jefferson Parish Sheriff Newell Normand and Lt. Gary Cook. In that lawsuit, Abdul alleged:

> On March 2, 2010 Lt. Cook of the Jefferson Parish Correctional Center conducted a commando style raid upon Annex D. Once incide the unit Lt. Cook gave an order to "Dispose" of all inmates police reports, personal notes, legal research, written materials, affidavits, witness phone numbers and addresses and evidence that was imperative to my defense (to help prepare myself for trial).

The second case, Civil Action No. 10-4031, was filed by Cornelius Scioneaux. He also named Normand and Cook as defendants. Scioneaux stated his claim as follows:

>On March 2, 2010 Lt. Cook gave orders to dispose of all inmates legal documents and everything that was in plain view. Lt. Cook and his "Goon Squad" destroyed my chances of having a trial that is free from fundamental unfairness, when he gave that order to dispose of everything. This rogue behavior can not be justified.

The third case, Civil Action No. 10-4452, was filed by inmate Devin Harry. He named as defendants Normand, Cook, and Sgt. Biewer. Harry stated his claim as follows:

>On April 8, 2010 Lt. Cook gave orders to Sgt. Biewer and the Rover Team to "Dispose" of everything that was in plain view. Upon Sgt. Biewer and the Rover Team entering the housing unit to conduct a shake down on Annex D, I was looking over all of my legal documents which pertained police reports, personal notes, legal research, correspondence, written material, motions, affidavits, and witness statements. After the shakedown I returned to my bunk and that's when I noticed all of my legal documents were gone.

Because the plaintiffs allege that their ability to mount a successful defense against their criminal charges was adversely affected by the defendants' actions, the status of those underlying criminal charges is therefore relevant in these proceedings. The records before the Court establish that Abdul was convicted of attempted second degree murder on May 4, 2011, Scioneaux pleaded guilty to first degree robbery on January 24, 2011, and Harry is currently awaiting trial for armed robbery.

Motions for Summary Judgment

Scioneaux, Harry, and the defendants have all moved for summary judgment pursuant to Fed.R.Civ.P. 56. The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue"

when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).

In their motion for summary judgment, the defendants argue that the plaintiffs have failed to state a proper claim against Sheriff Normand. They are correct for the following reasons.

Clearly, the plaintiffs have not stated a claim against Normand in his individual capacity. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In the instant cases, the plaintiffs do not allege that Normand had any personal involvement whatsoever in the shakedowns or destruction of property. Further, Normand may not be held liable

pursuant to § 1983 under any theory of strict liability[1] or vicarious liability[2] for federal civil rights violations allegedly committed by his subordinates.

The plaintiffs likewise have not stated a proper claim against Normand in his official capacity. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Normand would in reality be a claim against the local governmental body itself. Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

---

[1]  Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[2]  Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." ); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, the plaintiffs do not allege that their constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom.

In light of the foregoing, the defendants' motion must be granted with respect to the claims against Sheriff Normand, and those claims must be dismissed.

As to the plaintiffs' remaining claims, the Court notes that the defendants interpret those claims as ones alleging that the plaintiffs were denied access to the courts. The Court finds that interpretation dubious and unpersuasive. Clearly, the claims do not fall with the ambit of traditional access-to-courts claims, in that the plaintiffs are not contending that the defendants barred them access to the courts either literally (such as by imposing physical barriers) or figuratively (such as by denying them access to law libraries or assistance from legally trained personnel). Rather, they are claiming that the defendants destroyed their exculpatory evidence. That is a different species of constitutional claim not necessarily constrained by the requirements of traditional First Amendment access-to-courts claims. For example, regardless of whether an arrested individual has

a viable access-to-courts claim, his *due process* rights may nevertheless have been violated by the bad-faith destruction of exculpatory evidence if he was left unable demonstrate that innocence in alternate ways.  See United States v. Thompson, 130 F.3d 676, 686 (5th Cir. 1997); see also United States v. Price, 298 Fed. App'x 931, 937 (11th Cir. 2008); United States v. Mejia, 291 Fed. App'x 79, 81 (9th Cir. 2008); United States v. Ossai, 485 F.3d 25, 28 (1st Cir. 2007); United States v. LaVallee, 439 F.3d 670, 699 (10th Cir. 2006); United States v. Stewart, 388 F.3d 1079, 1085 (7th Cir. 2004).  The Court therefore rejects the defendants' argument narrowly construing the claims as First Amendment access-to-courts claims.

However, much more persuasive is the defendants' alternative argument that the plaintiffs' claims must be considered in light of Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (footnote omitted).

Clearly, the claims of Abdul and Scioneaux are barred by Heck. In a similar case filed by inmate Steven Hamilton against Lt. D. Lyons, the United States Fifth Circuit Court of Appeals explained:

> Hamilton also alleges that Lyons violated his constitutional rights by altering and destroying evidence relevant to the charges against him. Convictions tainted by the suppression, destruction, or alteration of material evidence violate a defendant's Fourteenth Amendment right to due process. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). If we were to find that Lyons altered and destroyed evidence relevant to the charges against Hamilton, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges. See Heck, 512 U.S. at ___, 114 S.Ct. at 2368, 2374 (holding that allegation of knowing destruction of exculpatory evidence necessarily implied invalidity of conviction and sentence). Thus, Heck also bars this claim unless Hamilton proves that his convictions or sentences have been reversed, expunged, invalidated, or otherwise called into question. Since Hamilton has not made such a showing, this claim is legally frivolous.

Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996); see also White v. Fox, 294 Fed. App'x 955, 958 (5th Cir. 2008). Because both Abdul and Scioneaux have outstanding criminal convictions, their claims must be dismissed with prejudice to their being asserted again until the Heck conditions are met.[3]

That said, the same is not true as to Harry, because he has not yet been convicted. The United States Supreme Court has expressly held that Heck does not bar "an action which would impugn *an anticipated future conviction*...." Wallace v. Kato, 549 U.S. 384, 393 (2007). Nevertheless, the Supreme Court made clear that the limitation on Heck's direct applicability does not mean that federal courts should forge ahead with cases in which similar considerations exist. Rather, the Supreme Court held:

---

[3] See DeLeon v. City of Corpus Christi, 488 F.3d 649, 657 (5th Cir. 2007) ("A preferred order of dismissal in Heck cases decrees, 'Plaintiffs claims are dismissed with prejudice to their being asserted again until the Heck conditions are met.'").

7

> If a plaintiff files a false arrest claim before he has been convicted *(or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial)*, it is within the power of the district court, in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

Id. at 393-94 (citations omitted; emphasis added). Therefore, under that reasoning, Harry's claims should be stayed until such time as his state criminal proceedings are concluded. If he is ultimately convicted, the defendants may move to reopen this case to have his remaining claims dismissed pursuant to Heck. On the other hand, if Harry is acquitted, he may move to reopen the case to pursue those claims.[4]

Accordingly,

**IT IS ORDERED** that the motions for summary judgment filed by Cornelius Scioneaux and Devin Harry, Rec. Docs. 30, 36, and 37, are **DENIED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by the defendants, Rec. Doc. 32, is **GRANTED IN PART AND DENIED IN PART**. That motion is **GRANTED** with respect to the claims of all plaintiffs against Sheriff Normand, and those claims are **DISMISSED WITH PREJUDICE**. The motion is also **GRANTED** with respect to the remaining claims asserted by Hassan Allé Abdul and Cornelius Scioneaux, and those claims are

---

[4] The Court notes, however, that it appears Harry would then have another obstacle to overcome with respect to his claims. Because he claims that the destruction of his exculpatory evidence adversely affected his right to mount a successful defense to his criminal charge, his acquittal on that charge would seem to severely undercut that claim. If he was acquitted despite the destruction of his evidence, it is unclear what compensable harm he suffered.

**DISMISSED WITH PREJUDICE** to their being asserted again until the <u>Heck</u> conditions are met. However, the motion is **DENIED** with respect to the remaining claims asserted by Devin Harry.

**IT IS FURTHER ORDERED** that Devin Harry's remaining claims are **STAYED** and that the Clerk of Court mark this action **CLOSED** for statistical purposes.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction over Devin Harry's remaining claims and that his case be restored to the trial docket upon the motion of any party once Harry's state criminal proceedings are concluded, so that the remaining claims may proceed to final disposition.

New Orleans, Louisiana, this twenty-seventh day of June, 2011.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**